UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| YOLANDA PENA AND RAMIRO PENA | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-03-151 |
| | § | |
| SHERWIN ALUMINA, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM & ORDER**

Pending before the Court are Defendant's Motion for Summary Judgment as to Claims of Ramiro Pena (Dkt#19) and Defendant's Motion for Summary Judgment as to the Claims of Yolanda Pena (Dkt. #21). The Court, having reviewed the motions and the Plaintiffs' responses, is of the opinion that both motions should be GRANTED.

**Factual and Procedural Background**

Plaintiffs Yolanda Pena and Ramiro Pena, a married couple, are both employed in differing capacities by Defendant Sherwin Alumina. On December 11, 2003, the Penas filed this lawsuit alleging that Defendant had discriminated against each of them on the basis of national origin. In addition to her national origin discrimination claim, Yolanda Pena ("Yolanda") alleges that she has been subjected to a hostile work environment. In addition to his discrimination claim, Ramiro Pena ("Ramiro") alleges that Defendant retaliated against him in violation of Title VII. The facts giving rise to each Plaintiff's causes of action differ; therefore, the Court will address each factual scenario in turn.

**Background for Yolanda's claims**

Yolanda Pena is an Hispanic female who has been employed at the Sherwin Alumina plant

since 1973. Until 1990, she held the position of Records Clerk. At that time, she was promoted to the position of Personnel Representative. She served in that capacity, with a Wage Grade of 2, until 1999 when she was promoted to a Wage Grade of 4. She was promoted to Wage Grade 6 in 2001.

At some point in 2001, the former Human Resources Manager at the plant left his employment with Sherwin Alumina, thus creating a vacancy in that department. Sherwin Alumina did not solicit applications or ask those interested to submit any paperwork. Instead, a team was assembled to discuss the vacancy and the options for filling it. Included on the list assembled by the team of individuals were Larry Bittle and Yolanda Pena. Bittle was eventually chosen for the position.

Yolanda Pena asserts that she was discriminated against on the basis of her national origin during the selection process for the Human Resources position and that she has been subjected to a hostile work environment since the time Bittle was promoted in 2001.

**Background for Ramiro Pena's claims**

Ramiro Pena has been an employee of Defendant since 1978, working in operations. On January 1, 2003, an incident occurred which required an investigation. The investigation revealed that there were four individuals, including Ramiro Pena, who were either involved or should have knowledge of the incident. None of these individuals came forward with information regarding the incident. The four individuals, three Hispanic males and one Caucasian non-Hispanic male were suspended for failing to assist the company in investigating the incident.

In addition, two of the four individuals, Ramiro Pena and the Caucasian non-Hispanic male, were suspended for an additional charge of violating the plant's substance abuse policy. Both individuals were requested to provide urine samples for testing in conjunction with the

substance abuse policy and both refused. Under the policy, refusal to submit to substance abuse testing is grounds for termination from the company.

On January 20, 2003, the Caucasian non-Hispanic male came forward with a statement indicating he was directly responsible for the incident on January 1, 2003. As a result, and because of his failure to comply with the substance abuse policy, his employment was terminated. Because the Caucasian non-Hispanic was deemed directly responsible for the January 1 incident, two of the Hispanic males were subsequently reinstated. Ramiro Pena's employment was not reinstated because he had failed to comply with the company drug policy.

Pena appealed the decision to terminate him through the grievance procedures of the United Steelworkers Union, of which he is a member. As a result of an additional review which occurred in response to the Union's pleas on Ramiro Pena's behalf, Ramiro was tendered an offer of reinstatement. Ramiro accepted the offer and was reinstated on February 13, 2003.

Ramiro Pena alleges that he was subjected to national origin discrimination during the investigation surrounding the January 1, 2003 incident, the enforcement of the substance abuse policy and his subsequent discharge. He also alleges that he was subjected to retaliation as a result of his wife's protected activities.

**Requests for Admission**

Defendant asserts that the Requests for Admission served on Plaintiffs have not been answered and thus all information contained within the requests should be deemed admitted for the purposes of this cause of action. According to Rule 36 of the Federal Rules of Civil Procedure, "[t]he matter is admitted unless, within 30 days after service of the request,...the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney." Rule 36(b) then states that

"[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission."

Plaintiffs argue that counsel was in the process of moving her offices during the relevant time period, that Defendant was aware of this situation, but that it failed to send the discovery to the appropriate address or call to determine whether the requests had been received. As a result, Plaintiffs request that the Court not deem any responses admitted except those actually signed and submitted by Plaintiffs after their review of discovery documents.

The Court notes that there are two attorneys listed on the docket sheet and on all motions as "Attorneys for Plaintiff," Jeanne Opdyke Chastain and Bobby D. Brown. Additionally, the Court's docket sheet reflects that, although Ms. Chastain is listed as lead counsel, both attorneys for Plaintiffs are listed as an "attorney to be noticed." The exhibits attached to Defendant's motion for summary judgment show that both Jeanne Chastain and Bobby Brown were served with the requests for admission in August. Although the documents mailed to Ms. Chastain's office were returned by the post office, the return receipt requested card from Mr. Brown's copy of the requests was returned to Defendant, indicating that Mr. Brown, as counsel for Plaintiffs, received the documents. The return receipt was signed on August 26, 2004 by C. Brown. Thus it cannot accurately be said that Plaintiffs were not served with the requests for admissions. Although lead counsel may not have received her copies of the requests, her co-counsel did.

The Court additionally notes that the motions for summary judgment were filed in December 2004. Since that date, Plaintiffs have not, to the Court's knowledge, answered the requests for admission or requested that this Court allow them to modify their responses in any way. Nor has any supplemental briefing on this issue been submitted to the Court. Thus, because counsel for the Plaintiffs received the requests for admission and these requests went unanswered,

4

and because Plaintiffs have taken no action to rectify the situation since the motion for summary judgment was filed bringing this issue to their attention, the Court will allow the admissions to stand. The Court notes, however, that Defendant's motion for summary judgment also addresses Plaintiffs' claims on the merits, without reference to the deemed admissions. The Court therefore deems it appropriate in this case to address the claims without reference to the deemed admissions.

## Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then they are not entitled to a summary judgment and no defense to the motion is required. *Id*.

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the

movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001); *see also Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Willis v. Moore Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

**Discrimination Claims**

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A plaintiff can prove a

claim of intentional discrimination by either direct or circumstantial evidence. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir.2000); *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir.), *cert. denied*, 525 U.S. 1000, 119 S.Ct. 509, 142 L.Ed.2d 422 (1998). "Direct evidence" is "evidence, which if believed, proves the fact [in question] without inference or presumption." *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir.2003) (citations omitted). Plaintiffs have presented no direct evidence of discrimination based on national origin; therefore, they must rely on the burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas* to create a presumption of intentional discrimination *See Russell*, 235 F.3d at 222; *see also Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir.2000). To create such a presumption, Plaintiffs must establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. 792, 802 (1973).  A prima facie case for discrimination based on national origin or religion may be established by a showing that the plaintiff was a member of an identifiable national origin or religion; that he was qualified for the benefit or promotion he sought; that he was denied these benefits and such denial constitutes an adverse employment decision; and that the adverse employment decision was differentially applied to plaintiff. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir.1997).

If Plaintiffs succeed in demonstrating a prima facie case, Defendant must then provide a legitimate, nondiscriminatory reason for its action. *Id.* Finally, if the parties satisfy their initial burdens, the case reaches the "pretext stage," and Plaintiffs must then adduce sufficient evidence to permit a reasonable trier of fact to find pretext or intentional discrimination. *Id.* at 804; *see also Burdine*, 450 U.S. at 252-53; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425-26 (5th Cir.2000).

**Yolanda Pena's Claim**

Defendant's motion for summary judgment argues that Yolanda's claim of discrimination derived from Defendant's failure to promote her in 2001 is time-barred because she failed to file a claim with the Equal Employment Opportunity Commission within 300 days of the occurrence. Yolanda argues, in response, that Defendant's actions in failing to promote her constitutes the beginning of a continuous and on-going scheme of discrimination, thereby allowing her to avoid the statute of limitations requirements.

Federal courts have created equitable exceptions to the 300-day limitations period, however, including the continuing violation doctrine. *See e.g. Celestine v. Petroleos de Venezuella S.A.*, 266 F.3d 343, 351 (5th Cir. 2001). The continuing violation doctrine, which may be used in "limited circumstances," relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period. *Id.* (citing *Messer v. Meno*, 130 F.3d 130, 135 (5th Cir. 1997)). "The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights." *Messer*, 130 F.3d at 134-35.

The continuing violation doctrine accommodates plaintiffs who can show that there has been "a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all discriminatory acts committed as part of this pattern or policy can be considered timely." *Celestine*, 266 F.3d at 351-52. A plaintiff seeking to invoke the continuing violation doctrine must demonstrate more than a series of discrete discriminatory acts. *Id.* at 352. Instead, the plaintiff must show "an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action." *Id.* (citing *Huckabay v. Moore,* 142

F.3d 233, 239 (5th Cir. 1998)).

The Court considers the following non-exclusive list when determining whether a continuing violation exists: 1) whether the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation; 2) whether the alleged acts were recurring or isolated incidents; and 3) whether the act had the degree of permanence that should have triggered an employee's awareness of and duty to assert his or her rights. *Id.* (citing *Huckabay* 142 F.3d at 239). The third factor is "perhaps of most importance." *Huckabay*, 142 F.3d at 239. A "one time employment event," including the failure to hire, promote, or train and a dismissal or demotion, is "the sort of discrete and salient event that should put the employee on notice that a cause of action has accrued." *See e.g., Celestine*, 266 F.3d at 352.

The Fifth Circuit has phrased the inquiry surrounding the third factor, permanence, in the form of the following question: "[d]oes the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?" *Id.* The Supreme Court, in *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002), held that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 115.

Yolanda's claim for national origin discrimination consists of a single allegation of failing to promote her in 2001. This constitutes a discrete incident of actionable discrimination as defined by the Supreme Court and Fifth Circuit Court of Appeals. As such, Yolanda should have filed her complaint within 300 days of the alleged discrimination. Yolanda's response to the

9

motion for summary judgment acknowledges the 300 day requirement and admits that she failed to file a complaint within the 300 day time frame.  Because an action like the failure to promote is the sort of discrete act that places an employee on notice that a cause of action has accrued and Plaintiff failed to take the necessary steps within the statutorily prescribed time frame, her claim for national origin discrimination based on the failure to promote claim is statutorily time barred.  Therefore, Defendant's motion for summary judgment on this issue is GRANTED.

**Ramiro Pena's Claim**

In its Motion for Summary Judgment as to the claims of Ramiro Pena, Defendant argues that Ramiro Pena cannot establish a *prima facie* case for national origin discrimination.  Defendant does not dispute that Ramiro, as an Hispanic male, is a member of a protected class.  Nor does it challenge that he was qualified for the position he held or that an adverse employment action was taken.  Rather, Defendant asserts that Ramiro cannot establish that others, not in the protected class, were treated differently, or that he was replaced by someone outside the protected class.

Defendant argues that the disciplinary measures taken against Ramiro Pena were also taken against all members of his team that were involved in the incident–two other Hispanic males and a Caucasian non-Hispanic male.  Additionally, Defendant asserts that the only individual not ultimately reinstated to his former position was the Caucasian non-Hispanic male.  To support this contention, Defendant attached to its motion for summary judgment communications relating to the investigation which occurred as a result of the incident that ultimately led to Ramiro's suspension and termination, communications relating to the reinstatement of Ramiro Pena and two other Hispanic members of the crew allegedly involved in the incident, and communications relating to Ramiro's reinstatement as an employee.  Defendant also attached as an exhibit a copy of its substance abuse policy.

Ramiro asserts that non-Hispanic persons involved in accidents have not been required to submit to testing on penalty of losing their jobs and that non-Hispanic persons not involved in accidents were not required to submit to testing at all.  He also "raises the comparative employee, the Anglo safety director as being involved in a vehicular accident and not being required to drug test." *See Plaintiff's Response to Defendant's Motion for Summary Judgment* (Dkt. # 24), pg. 4. Ramiro, however, provides no evidence to support this allegation.  Rather, the only support for these assertions comes from conclusory statements contained in Ramiro's affidavit, which was attached to the response as Exhibit "A".

Ramiro's conclusory statements do not, in the Court's opinion, create an issue of fact, nor do they satisfy Plaintiff's burden of establishing a prima facie case by a preponderance of the evidence.  A party may not rely upon "unsubstantiated assertions" as competent summary judgment evidence. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." *Id*. The Court has no duty to search the record for triable issues. *Id*.

Because Ramiro has failed to identify specific evidence within the record to support his assertion that non-Hispanic males were treated differently, Defendant's evidence to the contrary remains uncontroverted.  As such, the Court finds that Ramiro has not established that other individuals outside the protected class were treated differently, except to the extent that the non-Hispanic individual involved in the alleged accident was terminated for his failure to cooperate with the investigation and failure to comply with the substance abuse policy, and his employment, unlike Ramiro's, was not ultimately reinstated.  Therefore, the Court will GRANT summary judgment as to this claim.

**Retaliation Claim**

In addition to its arguments relating to the national origin discrimination claim, Defendant challenges Ramiro's claim that he was retaliated against by the company for his wife Yolanda's engagement in protected activity. In retaliation cases, the plaintiff must first make a prima facie case showing: (1) he engaged in activity protected by Title VII; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). Defendant argues that Ramiro cannot establish that he engaged in a protected activity. Alternatively, Defendant argues that Ramiro cannot establish a causal connection between his wife Yolanda's protected activity and the adverse employment action suffered by him.

In *Holt v. JTM Industries*, the Fifth Circuit Court of Appeals held that conferring automatic standing on an employee for the protected activity of the employee's spouse would contradict the plain language of the anti-retaliation provisions of various statutes. 89 F.3d 1224, 1226 (5th Cir. 1996). Although the Court was specifically addressing the anti-retaliation provision of the ADEA, the court noted that "the anti-retaliation provisions of the ADEA and Title VII are similar and 'cases interpreting the latter provision are frequently relied upon in interpreting the former.'" *Id.* (citing *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992). The Court noted that in most cases, "the relatives and friends who are at risk for retaliation will have participated *in some manner* in a co-worker's charge of discrimination." *Id.* at 1228. (emphasis in original). The Court held, however, that "when an individual, spouse or otherwise, has not participated 'in any manner' in conduct that is protected . . . , we hold that he does not have automatic standing to sue for retaliation . . . simply because his spouse has engaged in protected activity." *Id.*

Ramiro's response to the motion for summary judgment does not provide the Court with

12

any guidance as to his level of participation. Rather, the response simply states that "he obviously assisted his wife and participated in some manner in the investigation of her complaint." *See Plaintiff's Response to Defendant's Motion for Summary Judgment* (Dkt. # 24), pg. 4. First, the Court notes that there is no indication as to the investigation alluded to within the statement. Second, Ramiro's affidavit, the sum total of the summary judgment evidence provided by him in response to the motion for summary judgment, is devoid of any mention of Ramiro's assistance with his wife's protected activity. As in *Holt*, there is nothing within the summary judgment evidence to suggest that Ramiro was anything more than a "passive observer of [his wife's] protected activities." *Holt*, 89 F.3d at 1227. Without support, this assertion, then, is not enough to defeat summary judgment. *See Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998) (A party may not rely upon "unsubstantiated assertions" as competent summary judgment evidence.)

**Hostile Work Environment**

With regard to Yolanda's hostile work environment claim, Defendant alleges that Yolanda has failed to establish that the complained of conduct was sufficiently severe and persistent, or that it has interfered with her ability to perform and succeed in the workplace. Yolanda responds that the hostility caused by her supervisor has, at times, bordered on violence, that she has suffered instances of improper coercion to leave her job, that she has been removed from previous management responsibilities, has been denied career opportunities, and that she has been given poor evaluations and denied pay increases as a result of the hostile work environment.

To state a claim for relief under Title VII for hostile work environment, Plaintiff must prove (1) that she belongs to a protected class, (2) that she was subject to unwelcome harassment, (3) that the harassment was based on her status as a member of a protected class, (4) that the

harassment affected a term, condition or privilege of employment, and (5) that the employer knew or should have known about the harassment and failed to take prompt remedial action. *See Celestine v. Petroleos de Venez. SA,* 266 F.3d 343, 353 (5th Cir.2001). Where the plaintiff alleges she was harassed by a supervisor with immediate or successively higher authority over her, she need only satisfy the first four elements. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Felton v. Polles*, 315 F.3d 470, 484 (5th Cir. 2002). Once the plaintiff makes this showing, the employer is subject to vicarious liability for the discriminatory acts of its supervisor. *Faragher*, 524 U.S. at 807.

The Supreme Court has stated that harassment affects a term or condition of employment when it is so severe that it alters the conditions of the victim's employment and creates an abusive working environment. *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993). In order to be actionable, however, the challenged conduct must create an environment that a reasonable person would find hostile or abusive. *Id*. To this end, the plaintiff must prove her work environment was both subjectively and objectively hostile, i.e., the plaintiff must subjectively perceive the unwelcome harassment as being severe or pervasive, and this subjective perception must be objectively reasonable. *Harris*, 510 U.S. at 21-22; *Frank v. Xerox Corp*., 347 F.3d 130, 138 (5th Cir.2003). Whether an environment is hostile or abusive depends on a totality of circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 22.

Defendant asserts that Yolanda has failed to establish that the conduct complained of was so severe and pervasive that a reasonable person would find it offensive. Additionally, Defendant asserts that the conduct has not been so severe or egregious as to interfere with Yolanda's ability

to succeed in the workplace.  To support this assertion, Defendant argues that Yolanda has succeeded in her position and that it has been "pleased with the work she has done, particularly in the area of implementing and administering the benefits program."

Yolanda's affidavit, which was attached to the motion for summary judgment, alleges that Larry Bittle has created a hostile work environment for Plaintiff since 2001 when he was promoted to the position of Human Resources Director.  The affidavit alleges that Bittle placed an individual with less experience than Yolanda in a labor relations position, and decided that he would attend management meetings.  The affidavit further alleges that Yolanda was not upgraded from a Wage 4 to a Wage 7 on one occasion and on another occasion she did not receive the full amount of a merit increase as a result of a poor evaluation.  Additionally, the affidavit alleges that Yolanda has reported breaches of the human relations policy and Bittle failed to respond.  It also alleges an occasion where Bittle threatened Yolanda and another employee.  Likewise, Yolanda alleges that at a particular meeting, Bittle became loud and pounded his fists on the table in a threatening manner.  Additionally, she asserts that Bittle frequently makes remarks about his distaste for the amount of money female clerks are paid.  Finally, Yolanda alleges that Bittle has encouraged her to retire on several occasions and asked her for her retirement date on one occasion.

At best, then, Yolanda has identified seven or eight instances involving hostile conditions that occurred between the years of 2001, when Bittle was promoted, and 2004 when this lawsuit was filed.  The Court notes, however, that although Yolanda alleges that others have suffered from this hostile work environment, there is no supporting documentation, outside of her affidavit, that others have been affected. Additionally, although Plaintiff's affidavit alleges that these are only a few examples of the incidents creating a hostile work environment, Plaintiff provides no guidance

as to what the other instances were or when they occurred. The allegations that other instances exist and that others have been subjected to a hostile work do not constitute competent summary judgment evidence. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998). Additionally, the Court finds that the incidents identified, when taken collectively, do not create the type of severe and pervasively hostile environment that Title VII was intended to protect against. *See Shepherd v. Comptroller of Public Accounts, State of Texas*, 168 F.2d 871, 874 (5th Cir. 1999). As such, the Court finds that summary judgment as to this issue should be GRANTED.

## Conclusion

For the reasons set forth above, Defendant's Motions for Summary Judgment as to the claims of Ramiro Pena (Dkt. #19) and Yolanda Pena (Dkt. #21) are GRANTED.

It is so ORDERED.

Signed this 11th day of May, 2005.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE